```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 5, 2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

ROCHELLY BAEZ,

                Plaintiff,

             -v-                           14-cv-6621 (KBF)

ANNE FONTAINE USA, INC., et al.,        OPINION & ORDER

                Defendants.

------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

       Rochelly Baez brings this employment discrimination suit against Anne Fontaine USA, Inc. ("AFUSA"), her former employer, and two of its executives, Ari Zlotkin and Cindy D'Luzansky. It is undisputed that Baez's coworkers discussed an incident in which plaintiff attended a meeting with Zlotkin, AFUSA's chief executive officer ("CEO"), wearing a revealing shirt and no bra. The statements by the coworkers are referred to throughout the parties' papers as "rumors"—though the facts are materially uncontested. Baez complained about her coworkers' talk. Following this incident, a certain amount of office drama ensued. It is undisputed that "drama" was cited as one of the reasons for plaintiff's eventual termination.

       The issues before the Court are, *inter alia*, (1) whether in light of the association of the "drama" with plaintiff's complaints regarding her coworkers' discussions of her dress and female body parts, defendants' consideration of such "drama" in connection with their termination of Baez can support a claim for retaliation, and (2) whether unwanted coworker discussions of such an incident (or

a similar incident) can support a claim for hostile work environment. In all events, it is clear that Baez's claims are not strong; and it is clear that plaintiff's action is not the type with which the relevant discrimination statutes are most concerned. Nevertheless, the Court cannot say that such facts do not support a very weak claim of discrimination. Certainly, if comments on bra-less attendance at a meeting were made by a man, plaintiff's case would be much stronger. There is no legal reason why the gender or number of speakers alters the analysis. For the reasons set forth below, defendants' motion for summary judgment is GRANTED in part and DENIED in part.

I.  FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise noted, the facts set out below are undisputed. The Court recounts only those facts relevant to the pending motion.

AFUSA is a clothing retailer that operates twenty-five stores in the United States. (Defs.' 56.1 Statement ¶ 1, ECF No. 55.) Zlotkin is AFUSA's president and CEO. (*Id.* ¶ 5.) D'Luzansky was AFUSA's Corporate Controller from February 2006 through May 2014, a role that included human resources responsibilities. (*Id.* ¶ 6.) Baez worked at AFUSA from October 2011 until her termination on February 7, 2014. (*Id.* ¶ 7.) She was the company's regional manager for the East Coast from approximately October 2012 until her termination, during which time she was responsible for fifteen stores. (*Id.* ¶¶ 7, 10, 11.)

According to defendants, there were several issues with Baez's job performance in 2013. (*See, e.g., id.* ¶¶ 16-38, 48.) Baez contests many of these allegations. It is undisputed that, in September 2013, Zlotkin started looking to

replace her. (*Id.* ¶ 42.) On September 27, 2013, AFUSA offered Baez's position to Laura Stevens. (*Id.* ¶ 45.) Stevens did not take the job at that time. (*Id.* ¶ 47.) On January 6, 2014, however, D'Luzansky set up another meeting between Zlotkin and Stevens. (Goldberg Affirmation Ex. H, ECF No. 61-8.) On January 21, 2014, AFUSA offered Stevens the position of "North America Director" beginning February 10, 2014, which Stevens accepted on January 23, 2014. (*Id.* Ex. B, ECF No. 61-2.)

Central to this case, on December 27, 2013, Baez learned that Amanda Blynn, the Boston store manager, Julia Fricke, AFUSA's retail operations manager, and Abigail LaValle, another store manager, were spreading a rumor[1] that Baez had worn a revealing shirt and no bra at a meeting with Zlotkin, thereby showing him her breasts. (Defs.' 56.1 Statement ¶¶ 14, 31, 35, 55-59.) Baez has not disputed the fact that she did not wear a bra that day, and indeed testified that she "normally [doesn't] wear bras," but denies that she showed Zlotkin her breasts. (Baez Dep. 1 40:11-15, 49:20-50:12.) On December 27 or 28, 2013, Baez reported the rumor to D'Luzansky, the corporate controller. (Defs.' 56.1 Statement ¶ 62.) D'Luzansky spoke with Fricke, AFUSA's retail operations manager, about the rumor, (*id.* ¶ 64), counseled Baez not to "write up" LaValle because plaintiff already had given her a warning, (*id.* ¶ 66), and counseled against Baez terminating Blynn because she was a top performing manager, (*id.* ¶ 67). On December 27, 2013, Baez also sent an email to Zlotkin complaining that Blynn was telling her team that Baez

---

[1] As stated above, the word "rumor" is used to describe unwanted coworker discussions of plaintiff; it is not used to suggest such coworker remarks were not, at least in material part, based in fact. Although Baez maintains that she never showed her breasts to Zlotkin, (Baez Dep. 1 40:11-15, ECF No. 67-1), she has conceded that she was not wearing a bra that day and that she normally does not wear a bra, (*id.* at 50:7-8, 11-12).

3

would be fired after the holidays. (*Id.* ¶¶ 69, 70.) The email did not mention the rumor about Baez wearing revealing clothing resulting in her showing Zlotkin her breasts. (*Id.* ¶ 71.) In a January 14, 2014 email responding to Baez's concerns about the rumor, D'Luzansky wrote that:

> [R]egarding the content of rumor/gossip, you either need to be strong and say 'so be it, I make my own fashion and life choices. . . .' Or, if the content bothers you, you need to adjust what you are doing to prevent such rumors/gossip, but you can't prevent people from having their opinions. (Goldberg Affirmation Ex. F at 3, ECF No. 61-6.)

D'Luzansky also wrote that she did not "think escalating to a written warning would be recommended, or necessary, at this time." (*Id.*)

On January 30, 2014, at Zlotkin's direction, D'Luzansky and Baez met with Blynn to provide her a written warning. (Defs.' 56.1 Statement ¶¶ 82, 84.) Baez recorded that conversation. (*Id.* ¶ 85.) The warning stated:

> Over several incidences, staff (both within the Boston store and within the US company) have commented on [Blynn's] opinions of her direct boss, Rochelly Baez. These opinions range from questioning Rochelly's reliability, work ethic, managerial skill and overall character. . . . It has [] created a great amount of distraction (resulting in gossip and rumor), not only within her region, but within the US. (*Id.* ¶ 87.)

Baez disagreed with the wording of the warning, (*id.* ¶ 88), and, for her part, Blynn refused to sign the statement. (*Id.* ¶ 90.)

D'Luzanksy and Zlotkin fired Baez on February 7, 2014. (*Id.* ¶ 92.) Plaintiff recorded the meeting. (*Id.* ¶ 93.) Zlotkin gave three reasons for Baez's termination: her management of an employee at the Bal Harbor store; problems with the opening

4

of the Madison Avenue store in New York City; and that plaintiff was associated with "too much drama." (*Id.* ¶ 95.)

Baez also contends that AFUSA wrongfully withheld $5,000 from her after her termination. (*Id.* ¶ 105.)

Baez brought this lawsuit against AFUSA, Zlotkin, and D'Luzansky on August 19, 2014. (Complaint, ECF No. 1.) On January 28, 2015, defendants filed an amended answer to the complaint with a counterclaim against Baez for secretly recording a conversation with D'Luzansky and Blynn, in violation of Massachusetts state law. (Am. Answer & Countercl., ECF No. 20.) The next day, Baez brought an amended complaint ("AC"). (AC, ECF No. 21.) On February 10, 2015, defendants answered the amended complaint. (Answer, ECF No. 23.) On February 8, 2016, defendants filed a motion for summary judgment. (Mot. Summ. J., ECF No. 53.) That motion was fully briefed as of April 11, 2016. (Reply, ECF No. 64.) On August 23, 2016, U.S. District Judge Analisa Torres ordered the parties to file all record evidence cited in their summary judgment papers. (Order, ECF No. 66.) The materials were fully submitted on September 6, 2016. The case was transferred to the undersigned on November 22, 2016.

II.   LEGAL PRINCIPLES

Summary judgment may not be granted unless a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The Court's function on summary judgment is to determine whether there exist any genuine issues of material fact to be tried, not to resolve any factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

III. ANALYSIS

    A. <u>Retaliation</u>

Baez alleges that she was fired from AFUSA because she complained about the rumor that she showed her breasts to Zlotkin by wearing a see-through shirt and no bra. Baez brings her retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8–101 *et seq.* For the following reasons, defendants' motion for summary judgment on Baez's retaliation claims is denied.

        1. <u>Title VII & NYSHRL (Counts I & II)</u>

Title VII prohibits employers from "discriminat[ing] against any of its employees . . . because [an employee] has opposed any practice made unlawful by Title VII." 42 U.S.C. § 2000e-3(a). Retaliation claims are analyzed under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden to establish a prima facie case of retaliation by showing "1) 'participation in a protected activity';

6

2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.'" *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). This showing creates a "presumption of retaliation," which the defendant may rebut by "articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action." *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Jute*, 420 F.3d at 173). If the defendant provides such an explanation, "the presumption of retaliation dissipates," *id.*, and the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, –– U.S. ––, 133 S. Ct. 2517, 2528 (2013). Retaliation claims under the NYSHRL are evaluated under the same standard as Title VII claims. *See, e.g., Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).

Baez has made out a prima facie case of discrimination. She complained directly to D'Luzanksy, a senior executive,[2] about the rumor and was terminated by D'Luzansky and Zlotkin—in part because she brought "too much drama" to the company—weeks later. *See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) ("[A] plaintiff can indirectly

---

[2] Defendants argue that Baez did not make a good faith complaint of discrimination. (Mot. Summ. J. Mem. Law 24-25, ECF No. 54.) Although the issue is a close one, the Court ultimately finds that the content of the rumor, which related to Baez's status as a female, supports the contention that plaintiff "had a good faith, reasonable belief that [s]he was opposing an employment practice made unlawful by Title VII," *Rodas v. Town of Farmington*, 567 F. App'x 24, 26 (2d Cir. 2014) (citation omitted), and defendants should have been on notice that Baez's complaint was protected activity. *See Benussi v. UBS Fin. Servs. Inc.*, No. 12 Civ. 1261, 2014 WL 558984, at *8 (S.D.N.Y. Feb. 13, 2014) (finding that a reasonable jury could conclude that a plaintiff's complaint about comments that she was "an unmarried woman" and a "dyke or a slut" was protected activity).

7

establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." (internal quotation marks omitted)). Defendants have rebutted the presumption of retaliation by articulating two legitimate, non-retaliatory reasons for the adverse employment action: Baez's allegedly poor management of an employee at the Bal Harbor store, and problems with the opening of the Madison Avenue store in New York City. Accordingly, Baez must counter this proof with evidence that retaliation was the "but-for" cause of her termination.

The Second Circuit recently explained that but-for causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Kwan*, 737 F.3d at 845. Here, the fact that Zlotkin listed the "drama" associated with plaintiff as one of the reasons for her termination, combined with the close temporal proximity between Baez's complaints about the rumor and her termination, is sufficient to create a genuine dispute of material fact as to whether Baez's complaint was a but-for cause of her termination. *See id.* at 847 ("[A] plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment."). Defendants' argument that Baez does not know whether Zlotkin was referring to the specific rumor about Baez showing her breasts when he mentioned "too much drama" is disputed by plaintiff (and, in any event, is a reasonable inference a juror could draw) and therefore does not eliminate any

8

genuine dispute of material fact. Accordingly, defendants' motion for summary judgment on Baez's Title VII and NYSHRL retaliation claims is denied.

### 2. NYCHRL (Count IV)

Employment discrimination claims under the NYCHRL are to "be evaluated separately from counterpart claims" brought under Title VII and the NYSHRL, *Kolenovic v. ABM Indus. Inc.*, 361 F. App'x 246, 248 (2d Cir. 2010), to effectuate the statute's "uniquely broad and remedial purposes," *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 339 (S.D.N.Y. 2010) (citations omitted). Instead, to "prevail on a retaliation claim under NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Wolf v. Time Warner, Inc.*, 548 F. App'x 693, 696 (2d Cir. 2013) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013)). Although the "but for" causation standard does not apply to retaliation claims under the NYCHRL, *see Mihalik*, 715 F.3d at 116, a plaintiff still must establish that "there was a causal connection between his protected activity and the employer's subsequent action, and must show that a defendant's legitimate reason for his termination was pretextual or 'motivated at least in part by an impermissible motive,'" *Weber v. City of New York*, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (quoting *Brightman v. Prison Health Serv., Inc.*, 970 N.Y.S.2d 789, 792 (2d Dep't 2013)).

9

Because defendants have failed to show that they are entitled to summary judgment under Baez's Title VII and NYSHRL retaliation claims, they are *a fortiori* not entitled to summary judgment under the more expansive NYCHRL.

> B.   NYCHRL Hostile Work Environment Claims (Counts III, V, VI)

Count III of Baez's AC alleges discrimination in violation of the NYCHRL, Count V brings a claim against D'Luzansky and Zlotkin for aiding and abetting a NYCHRL violation, and Count VI alleges employer liability under the NYCHRL. For the following reasons, defendants' motion for summary judgment on these claims is granted in part and denied in part.

> 1.   Legal Principles

The NYCHRL's liberal construction lowers the standard for a hostile work environment claim brought under its auspices.[3] *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011). All that is required to sustain a NYCHRL hostile work environment claim is "unequal treatment based on gender." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40 (1st Dep't 2009). Questions of "severity" or "pervasiveness" go to damages only—not to liability. *Id.* at 38. However, "the NYCHRL, like Title VII and the NYSHRL, is still not a general civility code, and petty slights and trivial inconveniences are not actionable." *Davis–Bell v. Columbia*

---

[3] Count III of the AC cites to Section 8-107(1)(a) of the N.Y.C. Administration Code, which makes it "an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the . . . gender . . . of any person, to . . . discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). It is unclear from the AC whether Baez is bringing a discrimination or a hostile work environment claim under the NYCHRL, as both types of claims are governed by Section 8-107(1)(a). *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012) ("Hostile work environment claims are analyzed under the same provision of the NYCHRL as discrimination claims."). However, in her opposition to the motion for summary judgment, Baez only makes arguments regarding a hostile work environment claim. (Opp'n Mem. 12-15, ECF No. 59.) Accordingly, the Court interprets the AC to bring a hostile work environment claim.

10

*Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012) (internal quotation marks omitted). And a plaintiff must establish that she suffered a hostile work environment because of her gender. *See, e.g.*, *Margherita v. FedEx Express*, 511 F. App'x 71, 72 (2d Cir. 2013).

Individual employees may be held directly liable under the NYCHRL "if they actually participated in the conduct giving rise to the discrimination claim." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) (citation omitted). "In order to hold an individual defendant liable for creating a hostile work environment under NYCHRL, evidence must show that the claim relates directly to the conduct and behavior of the individual." *Id.* Further, Section 8-107(6) of NYCHRL provides for aider and abettor liability.[4] Under this liability, "supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct" may be held liable. *Morgan v. NYS Att'y Gen.'s Office*, No. 11 Civ. 9389, 2013 WL 491525, at *13 (S.D.N.Y. Feb. 8, 2013). To establish aider and abettor liability, liability "must first be established as to the employer." *Dillon*, 85 F. Supp. 3d at 658 (quoting *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490-91 (S.D.N.Y. 1999)). "Although no bright line rule has been enunciated explaining how direct liability for the creation of a hostile work environment differs from aiding and abetting the creation of such a climate, case

---

[4] Count V of Baez's inartfully pleaded AC cites to Section 8-107(19) of the N.Y.C. Administrative Code, even though it alleges aiding and abetting liability. Section 8-107(19) provides that it is unlawful "for any person to coerce, intimidate, threaten or interfere with . . . any person in the exercise or enjoyment of . . . any right granted or protected pursuant to [Section 8-107]." N.Y.C. Admin. Code § 8-107(19). The parties interpret Count V as alleging a cause of action for aiding and abetting liability under Section 8-107(6) of the NYCHRL, so the Court will do the same.

11

law suggests that plaintiffs may bring both types of claims against individual defendants who fail to investigate or take remedial action in the face of a discrimination complaint." *Id.* at 659.

The NYCHRL imposes liability on the employer in three instances: "(1) where the offending employee 'exercised managerial or supervisory responsibility' . . . ; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" *Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1039 (N.Y. 2010) (citing N.Y.C. Admin. Code § 8-107(13)).

    2.   <u>Analysis</u>

Baez argues that she suffered from a hostile work environment because her coworkers spread a rumor that she went bra-less to a meeting with Zlotkin, (Defs.' 56.1 Statement ¶¶ 55-59), and because D'Luzansky did not sufficiently investigate, or sufficiently discipline employees for, the rumor, (Baez Dep. 1 at 66:9-20). The Court does not view these sorts of issues as within the heartland of what federal, state, and city anti-discrimination statutes are meant to address. However, even "a single comment that objectifies women . . . made in circumstances where that comment would, for example, signal views about the role of women in the workplace [may] be actionable." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 n.30 (1st Dep't 2009). Given that the content of the rumor by nature involved Baez's gender, the low standard under the NYCHRL, and the apparent repetition of "drama" over

this incident, the Court cannot say that no reasonable jury could find that Baez suffered from a hostile work environment.

There also is a dispute of fact as to whether D'Luzansky contributed to the hostile work environment by failing to investigate the rumor sufficiently. According to defendants, D'Luzansky adequately responded to Baez's allegations by, *inter alia*, giving Blynn a written warning. (Defs.' 56.1 Statement ¶¶ 82-83, 87.) Baez, however, argues that D'Luzansky refused to take appropriate remedial action. Baez points to the January 16, 2014 email in which D'Luzansky wrote that she "[didn't] think there's anything more than I need to be included in . . . . I don't think escalating to a written warning would be recommended, or necessary, at this time." (Goldberg Affirmation Ex. F.) Baez also argues that Blynn's written warning was insufficient because it concerned "insubordination that had been ongoing for a long time," rather than discipline specific to "spreading a rumor about [Baez's] breasts being shown to [her] boss." (Baez Dep. 2 198:21-25, ECF No. 67-2.)

These disputes of fact are sufficient to overcome defendants' motion for summary judgment regarding AFUSA's liability under Section 8-107(1) and, given that D'Luzansky "exercised managerial or supervisory responsibility," *Zakrzewska*, 928 N.E.2d at 1039, under Section 8-107(13). The Court also cannot say that no reasonable jury would find D'Luzansky liable—directly or under an aider-and-abettor theory—for the hostile work environment. No reasonable jury, however, could find that Zlotkin directly participated in, or aided and abetted, any violation of the NYCHRL. It is undisputed that, in an email to Zlotkin right after she learned

what people were saying about her, Baez did not even mention the rumor. (Defs.' 56.1 Statement ¶¶ 69-71.) Baez also testified that she and D'Luzansky flew to Boston to discipline Blynn at Zlotkin's direction. (Baez Dep. 2 at 183:17-184:5.) Accordingly, defendants' motion for summary judgment on Counts III, V, and VI is granted as to Zlotkin and otherwise denied.

        C.    <u>Failure to Timely Pay Sales Commission (Count VII)</u>

In Count VII of the AC, Baez brings a claim against AFUSA for failure to timely pay her sales commission. In particular, she alleges that $5,000 of the $10,000 she is owed by AFUSA has not been paid. (AC ¶ 80.) In response to defendants' argument that there is no genuine dispute of material fact that Baez is not entitled to a sales commission under New York Labor Law § 191, Baez tries to argue that she mistakenly used the word "commission," and is in fact bringing a breach of contract claim for AFUSA's failure to pay her bonus. (Opp'n Mem. 24, 24 n.6.)

It is clear to the Court, however, that Baez's cause of action was brought pursuant to Section 191, and plaintiff is improperly attempting to amend her complaint through her opposition briefs. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Most obviously, the second paragraph of the AC explicitly states that Baez is asserting a claim against AFUSA "for unlawfully withholding her sales commission . . . *in contravention of New York Labor Law Article 6, § 191-C.*" (AC ¶ 2 (emphasis added).) Second, Count VII is labeled "Failure to Timely Pay Sales Commission," and nowhere in that count does Baez mention breach of contract. (*Id.* ¶¶ 77-83.) Third, Count VII alleges that "[s]ales commission

14

is due within five days of being earned," (*id.* ¶ 78), and Section 191-c specifically states that sales representatives are to be paid their earned commissions "within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated," N.Y. Labor Law § 191-c(1). Fourth, Count VII alleges that Baez is "entitled to double the amount unlawfully withheld and attorneys' fees," (AC ¶ 83), and a principle who violates Section 191-c "shall be liable to the sales representative in a civil action for double damages" and an award of reasonable attorney's fees, N.Y. Labor Law § 191-c(3). It is clear to the Court, therefore, that Baez brought a claim for failure to timely pay a sales commission pursuant to Section 191, and any arguments to the contrary are specious.

Baez does not dispute defendants' contention that regional managers, like plaintiff, are not entitled to commissions. (Defs.' 56.1 Statement ¶ 106.) This concession acknowledges that the statute applies only to independent contractors. *See Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 88 n.4 (2d Cir. 2002); *see also DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 61 (S.D.N.Y. 2010). Further, even if Baez was entitled to a commission, her claim appears to be based on an alleged oral promise by Zlotkin that Baez would get $10,000 if she met her target for the last quarter in 2013. (*See* Opp'n Mem. 25 (citing a case for the proposition that "oral promises of non-discretionary bonuses are enforceable").) Section 191-c, however, covers breaches of written, not oral, contracts. *DeLuca*, 695 F. Supp. 2d at 61. Zlotkin's email to Baez on February 27, 2014 is not to the contrary. (Goldberg

15

Affirmation Ex. J, ECF No. 61-10.) That email, in which Zlotkin tells Baez that "we will pay the bonus," contains no details and is therefore insufficient to constitute a contract in and of itself. Accordingly, defendants' motion for summary judgment is granted as to Count VII of Baez's AC.

### D. Retaliatory Counterclaim (Count VIII)

In Count VIII, Baez argues that D'Luzansky's Massachusetts state law counterclaim against Baez for secretly recording a conversation with D'Luzansky and Blynn was brought in retaliation for this lawsuit in violation of Title VII, NYSHRL, and NYCHRL. (AC ¶¶ 86-89.)

As explained above, a retaliation claim is governed by the *McDonnell Douglas* burden-shifting framework. See *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing 1) participation in a protected activity; 2) defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. *Kwan*, 737 F.3d at 844.

Baez has established a prima facie case of retaliation: she engaged in protected activity by filing this lawsuit and suffered an adverse action by having a counterclaim filed against her shortly after she disclosed the recording. There is a material dispute of fact, however, whether D'Luzansky has provided a legitimate, non-retaliatory reason for filing the Massachusetts state law counterclaim. Baez does not dispute that she recorded a meeting between her, D'Luzansky, and Blynn. (Defs.' 56.1 Statement ¶ 112.) She also does not dispute that she did not tell

16

D'Luzansky or Blynn that she was recording. (*Id.* ¶ 113.) She does, however, argue that her phone was out in the open, and the microphone and recording time on her phone were visible to the meeting's participants. (Pl.'s 56.1 Counterstatement ¶¶ 113-114, ECF No. 60.) Because there is no violation of the relevant Massachusetts statute "where the recording was not secret, that is, [where] it was made with the parties' consent or actual knowledge," *Mahoney v. DeNuzzio*, No. 13 Civ. 11501, 2014 WL 347624, at *5 (D. Mass. Jan. 29, 2014), this dispute of fact precludes summary judgment on Count VIII.

IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED in part and DENIED in part. Because none of Baez's claims against Zlotkin withstands summary judgment, the Clerk of Court is directed to terminate him from the case.

SO ORDERED.

Dated: New York, New York
January 5, 2017

_____
KATHERINE B. FORREST
United States District Judge